UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

John Scott Burris,

        Plaintiff

  v.

First Reliance Standard Life Insurance Company,

        Defendant

Case No. 2:20-cv-00999-CDS-BNW

**Order Granting Defendant's Motion for Judgment and Denying as Moot Plaintiff's Motion for Judgment and Motion for Hearing**

[ECF Nos. 61, 66, 102]

    Plaintiff John Scott Burris brings this action against defendant First Reliance Standard Life Insurance Company (First Reliance) for wrongfully denying him long-term disability benefits in violation of the Employee Retirement Income Security Act (ERISA), First Am. Compl. (FAC), ECF No. 13. First Reliance filed a motion for judgment on the administrative record (ECF No. 61) which Burris opposed (ECF No. 70). The motion is fully briefed. For the reasons herein, First Reliance's motion is granted in part and denied in part.

I.      **Brief background**[1]

    Burris, through his employer, Wilson Elser Moskowitz Edelman & Dicker LLP (Wilson Elser), participated in a long-term disability plan, which is funded by a policy issued by First Reliance. FAC, ECF No. 13 at ¶¶ 3, 6–7. Burris' employment with Wilson Elser ended in December 2018, claiming disability. *Id.* at ¶¶ 26, 47–48. Specifically, Burris claimed disability under the long-term plan (the group policy), which First Reliance denied. *Id.* at ¶ 39. Burris sued, seeking benefits under ERISA. *See generally id.*

    First Reliance now moves for judgment on the administrative record. ECF No. 61. First Reliance asks the court to: (1) apply the arbitrary and capricious standard of review; (2) find

---

[1] The information set forth herein is taken from the FAC (ECF No. 13) and is used for background purposes only.

that Burris did not meet his burden to prove that First Reliance's claim determination was arbitrary and capricious; and therefore (3) enter judgment in its favor. *Id.* In the alternative, First Reliance moves for an order that remanding the claim to First Reliance for a determination of whether benefits are payable beyond May 1, 2021 (the 24-month limitation for disabilities caused or contributed to by mental or nervous disorders). *Id.* at 26. Burris opposes (ECF No. 70) and filed his own motion for summary judgment (ECF No. 66). Burris also filed a motion for hearing to make a formal proffer of excluded evidence. ECF No. 102.

## II.   Administrative record[2]

Burris was an attorney and non-equity partner at Wilson Elser from October 2010 through December 2018. AR, ECF No. 35-6 at 13, 40. Burris' medical records indicate that he had depression and anxiety since at least July of 2015. *Id.* at 2. It does not appear that these conditions impacted his employment at this time.

### A.   Burris' short-term disability claim

From late 2016 to 2017, Burris' physicians documented his complaints of career-related stress. On September 9, 2019, Burris' primary care physician, Dr. Stephen Fales, noted that Burris' reported his work as a defense attorney was stressful. AR, ECF 35-6 at 15–16. On May 11, 2017, Burris' addiction psychiatrist, Dr. Lesley Dickson, noted that Burris felt as though he had "[t]oo much work to do." *Id.* at 101. Later that month on May 24, Burris told Dr. Fales that he was unable to work due to overwhelming stress and depression and requested short-term disability as a result. *Id*. at 21. Dr. Fales' diagnosis was "severe depression with treatment for substance abuse and many somatic symptoms." *Id.* at 22. Burris filed his first short-term disability claim that month (May of 2017). *Id*. at 83–84. In support of Burris' short-term disability claim, his attending physician Dr. Fales submitted an attending physician's statement. *Id.* at 84. In that statement, Dr. Fales noted Burris' diagnosis and conditions were severe depression, exhaustion, headaches, and nausea, but did not indicate that these symptoms were

---

[2] The following facts are taken from the Administrative Record (AR). ECF No. 35.

work related. *Id.* at 84. Burris' short-term disability claim was approved on May 30, 2017, and was approved for leave through June 1, 2017. *Id.* at 94. The approval letter stated that Burris "met the group policy's definition of [t]otal [d]isability for the period ending June 15, 2017." *Id.* The letter also stated that, in order to obtain future benefits, Burris was required to submit additional documentation to prove his ongoing disability. *Id.* ("In regards to future benefits, we require additional documentation to support ongoing disability . . . . You are responsible for providing proof to us of your ongoing disability.").

In September of 2017, after returning to work, Burris told Dr. Fales that he was "[s]truggling back at work" and reported his work was "[v]ery intense." *Id.* at 35. Dr. Fales recorded that Burris' "severe stress" continued through April 2018. *Id.* at 38. In July 2018, Dr. Fales reported that Burris had "severe depression and anxiety from [his] work situation" and "[o]verwhelming conditions at work." *Id.* at 41–43. Burris' work-related stress continued through November 2018, when he told his doctors that he was burnt-out, did not like litigation work, and his symptoms were "almost entirely at work[.]" *Id.* at 44–47, 57.

On December 11, 2018, Burris submitted a second claim for short-term disability benefits. AR, ECF 35-5 at 48–49. In the accompanying attending physician's statement, Dr. Fales stated that Burris' diagnosis and concurrent conditions were "[s]evere depression with major somatic symptoms[.]" *Id.* at 49. Unlike Burris' first short-term disability claim, Dr. Fales indicated that the condition was due to an injury or sickness arising from Burris' employment, that Burris could not perform his job, and could not return to work until March of 2019. *Id.*

**B.   Burris' long-term disability claim**

On May 16, 2019, First Reliance notified Burris that it began processing his long-term disability benefits claim and may need additional information prior to making its decision, including medical records from his attending physicians. AR, ECF 35-5 at 2. The policy insuring clause places the burden of proving disability on the insured employee,[3] stating that a monthly

---

[3] The policy emphasizes that it is the insured's responsibility to provide First Reliance with proof of total disability. *See* AR, ECF No. 35-14 at 17 (stating First Reliance will pay benefits "[w]hen [it] receive[s]

3

benefit will be issued if the insured: (1) is totally disabled as the result of a sickness or injury covered by the policy; (2) is under the regular care of a physician; (3) has completed the elimination period; and (4) submits satisfactory proof of total disability. AR, ECF No. 35-14 at 21. "Totally disabled" and "total disability" mean that, as a result of an injury or sickness during the 180-day elimination period and thereafter, an insured cannot perform the material duties of their "regular occupation." *Id.* at 12. "'Regular [o]ccupation' means the occupation the [i]nsured is routinely performing when [t]otal [d]isability begins." *Id.* In other words, Burris had to prove that he was totally disabled, meaning that he could not perform the material duties of his work as an attorney, in order to qualify for long-term disability. Further, the group policy limits benefits "caused by or contributed to" by mental or nervous disorders, including depression and anxiety, to an aggregate lifetime maximum period of up to 24 months. *Id.* at 25.

  On June 21, 2019, First Reliance informed Burris that it requested medical records from Dr. Fales, Dr. Dickson, and his therapist, Ms. Anna Goswami. AR, ECF 35-5 at 9–10. First Reliance again reiterated that, though it had requested the medical records as a courtesy to Burris, it was still his responsibility to follow up to ensure the requested information was provided. *Id.* at 10. First Reliance further noted that "[i]f all of the requested information [was] not received, [his] claim will be considered incomplete and [his] file may be closed." *Id.*

  On July 9, 2019, Burris spoke to a First Reliance long-term disability claim department representative regarding his long-term disability claim. ECF 35-4 at 20. During this call, Burris stated that his primary diagnosis was encephalomyelitis and chronic fatigue syndrome and that his symptoms were not work related. *Id.*

  On July 10, 2019, First Reliance conducted an initial clinical review of Burris' medical records, including a note produced by Dr. Fales on June 14, 2019, in which he changed his assessment from major depression to chronic fatigue syndrome. AR, ECF 35-2 at 23. This was

---

written proof of Total Disability covered by this Policy"), 22 (stating benefit payments will terminate if "the Insured fails to furnish the required proof of Total Disability.").

different from the preceding three notes from 12/26/2018, 2/28/2019, and 5/28/2019, reflecting follow up for stress, extreme anxiety, panic attacks, and/or depression. *Id.* Based on Burris' medical records, First Reliance found that Burris was not entitled to long-term disability because he did not prove that he was totally disabled as required by the policy, and because he retained the ability to perform the material duties of his regular occupation. AR, ECF No. 35-5 at 11, 13, 16. First Reliance informed Burris that he had the right to appeal. *Id.* at 16. First Reliance outlined what should be included in an appeal: "[y]our request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits," including claims for other benefits. *Id.*

### 1. *Burris' submits a letter from Dr. Fales regarding his chronic fatigue syndrome diagnosis.*

On August 19, 2019, Burris submitted a July 26, 2019 letter from Dr. Fales, in which Dr. Fales states that he diagnosed Burris with chronic fatigue syndrome on June 14, 2019 "after six months of persistent fatigue (between December 2018 and May 2019), and aggravated or additional symptoms resulting from mental or physical exertion" and that his 2017 and 2018 diagnosis of severe depression were preliminary. AR, ECF 35-8 at 143. Dr. Fales further stated that "[d]espite absence from work at Wilson Elser for 8 months, Mr. Burris reported that some of his "flu[]-like" symptoms worsened, even though some of his exertion-related symptoms have varied (e.g., anxiety, vomiting/nausea, agitation, hopelessness, anger, fear)." *Id.* He opined that "Burris's condition will not improve by performing work as an attorney either full time or part time." *Id.* However, as First Reliance notes (ECF No. 61 at 14), Dr. Fales never opined that Burris was unable to work as a result. *See* AR, ECF 35-8 at 143.

### 2. *Burris' appeal*

On December 28, 2019, Burris appealed the denial, arguing that his chronic fatigue syndrome qualified him for long-term disability benefits. AR, ECF 35-9 at 29–91. With his

appeal, Burris submitted additional notes from his new primary care physician, Dr. Patricia Prince, and his addiction psychiatrist, Dr. Dickson. AR, ECF 35-13 at 31–35, 51–53, 130–41. Both doctors discussed his chronic fatigue syndrome diagnosis, but neither indicated that it impaired his ability to perform the material duties of his regular occupation. *See id*. On January 16, Burris supplemented his appeal with a lab report. AR, ECF 35-4 at 35. Though Burris stated that Dr. Prince said the results were consistent with chronic fatigue syndrome, he did not submit any direct information from Dr. Prince. *Id*.

On February 19, 2020, First Reliance informed Burris that it had referred his appeal to a psychiatrist and a physiatrist for independent review.[4] AR, ECF 35-5 at 24–25. The independent review would "not only address the basis for the original determination on the claim file," but also "evaluate the claim facts in their entirety and determine if additional investigation is necessary in order to determine the eligibility for benefits under the group policy." *Id*.

On February 26, 2022, physiatrist Behzad Emad, M.D.,[5] issued a report based on Burris' complete medical record. AR, ECF 35-13 at 157–63. In addressing all medical conditions that impacted Burris' status, Dr. Emad noted that Burris experienced "chronic fatigue with reported muscle aches. However, his physical exam findings have been unremarkable with no deficits in motor, sensory, range of motion, nor gait. Functional impairment is not supported." *Id*. at 160. In response to whether there was a substantial change in Burris' condition as of December 1, 2018, the day he ceased work, Dr. Emad stated: "The claimant has multiple complaints including headaches, fatigue, and muscle aches. The reported pain is diffuse, rated as 4-5/10. However, his physical exam findings have been unremarkable. The claimant does have underlying psychological/psychiatric issues significantly impacting his ability to perform activities" but Dr. Emad deferred further discussion to the "appropriate specialist" as it was beyond Dr. Emad's

---

[4] The peer reviews were obtained through an independent third party, MES Peer Review Servies. AR, ECF 35-13 at 149, 156.

[5] Behzad Emad, M.D., is board certified in physical medicine and rehabilitation. AR, ECF 35-5 at 28.

area of expertise. *Id.* Similarly, on February 27, 2022, psychiatrist Nasreen Malik, M.D.[6] issued a report based on Burris' complete medical record. *Id.* at 150–55. In response to the same question, Dr. Malik stated that there was "no substantial change in the claimant's condition, however the medical records provided are not showing severe symptoms causing work preclusion in this case." *Id.* at 153. Dr. Malik later opined that Burris did not suffer from "severe global impairments that would preclude him from having the ability to function any work environment." *Id.* at 154.

On March 2, 2020, First Reliance provided Burris with the peer review reports. AR, ECF 35-5 at 26. It advised Burris that he should provide any additional information that he would like to be considered in his appeal no later than March 16, 2020, and indicated that it would issue its final determination by April 2, 2020. *Id.* On March 12, 2020, Burris emailed First Reliance, arguing that his chronic fatigue syndrome diagnosis entitled him to long-term disability benefits, and highlighting the 2019 lab report that he alleged established his disability. AR, ECF No. 35-13 at 164–66. Although he did not provide any additional medical information, First Reliance sent Burris' email and the November 4, 2019 lab report that he referenced to Dr. Emad and Dr. Malik for review, asking for a clarification to the initial order. AR, ECF No. 35-4 at 37. Neither doctor changed their prior opinion. *See* ECF No. 35-13 at 170–71, 176–77.

On April 1, 2020, First Reliance informed Burris that, after the independent review of his claims, it determined that its original decision to deny his benefits was appropriate. AR, ECF No. 35-5 at 28. First Reliance notes that, while Burris' medical records appeared to indicate a "level of impairment specific to depression and [c]hronic [f]atigue [s]yndrome, the severity was not consistent with the inability to perform material duties" of his regular occupation, as required for long-term disability. *Id.* at 32, 33. As a result, First Reliance "concluded based on [its] review of all the materials submitted" Burris was not considered "totally disabled[,]" as

---

[6] Nasreen Malik, M.D. is board certified in psychiatry.

defined by the group policy. *Id.* at 33. As a result, Burris was not entitled to long-term disability benefits.

## III. Legal standard

29 U.S.C. Section 1132(a)(1)(B) empowers district courts to review a challenged denial of benefits under ERISA. This provision allows a beneficiary to commence a civil lawsuit to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The applicable standard of review in challenges of an ERISA determination is dependent on the controlling plan's language. A district court will review a denial of benefits under a "a de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). "Where an ERISA plan confers discretionary authority upon a plan administrator to determine eligibility for benefits, we generally review the administrator's decision to deny benefits for an abuse of discretion." *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009).

The Ninth Circuit has summarized a court's role on summary judgment in reviewing a plan administrator's denial of disability under an abuse of discretion standard as follows:

> Under this deferential standard, a plan administrator's decision will not be disturbed if reasonable. This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.
>
> This abuse of discretion standard, however, is not the end of the story. Instead, the degree of skepticism with which we regard a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest.

\*\*\*

> While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decision making. Where, for example, an insurer has taken active steps to reduce potential bias and to promote accuracy, the conflict may be given minimal weight in reviewing the insurer's benefits decisions. In contrast, where circumstances suggest a higher likelihood that the conflict affected the benefits decision, the conflict should prove more important (perhaps of great importance).
>
> ***
>
> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

*Stephan v. Unum Life Ins. Co. of America*, 697 F.3d. 917 (9th Cir. 2012) (cleaned up, internal quotation marks and citations omitted).

## IV. Discussion

The group policy states that First Reliance has "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." AR, ECF No. 35-14 at 17. As such, abuse of discretion applies. In applying this abuse of discretion standard of review, a reviewing court should "consider all of the relevant circumstances in evaluating the decision of the plan administrator" including weighing any conflict of interest as a factor in its review. *Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1041–42 (9th Cir. 2014) ("In all abuse-of-discretion review, whether or not an administrator's conflict of interest is a factor, a reviewing court should consider 'all the circumstances before it,' in assessing a denial of benefits under an ERISA plan.")

While no particular language is required, discretion can generally be granted by giving the administrator the power to construe uncertain terms and to make final benefits determinations, as in the long-term disability policy here. *Feibusch v. Integrated Device Tech., Inc. Emp. Ben. Plan*, 463 F.3d 880, 884–85 (9th Cir. 2006) (listing discretionary language). First Reliance

argues that this provision mandates an arbitrary and capricious standard of review. ECF No. 61 at 20. However, in the context of ERISA, the arbitrary and capricious and abuse of discretion standards of review are essentially the same: the court will not overturn the administrator's decision under the abuse of discretion standard unless it is "arbitrary and capricious," meaning "the administrator's decision cannot be disturbed if it is reasonable." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011); *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011) ("In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical."). Thus, the court reviews the plan administrator's determination applying the abuse of discretion standard.

Under this standard, the court will not disturb the plan administrator's determination unless it was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *Salomaa*, 642 F.3d at 675.

### A. Burris did not satisfy his burden of proof.

To establish total disability, Burris had the burden to prove, through medical evidence, that his sickness made him unable to perform the material and substantial duties of his regular occupation. AR, ECF 35-14 at 21. Burris claims that the administrative record shows that First Reliance found that he established total disability three times, thereby making its denial of his long-term disability benefits unreasonable. ECF No. 70 at 3. However, I find that the record here contains adequate evidence to support First Reliance's determination that Burris was not totally disabled, and its determination was reasonable.

Burris roots his argument in his diagnosis of chronic fatigue syndrome and whether he had a mental health impairment. He argues that, because Dr. Fales stated that he had misdiagnosed his chronic fatigue syndrome for severe depression, he actually had no history of disability or impairment due to mental health. ECF No. 70 at 3–4. He also claims that First Reliance abused its discretion in refusing to communicate with Dr. Fales until after he retired. *Id.* at 4. He further claims that First Reliance "was only willing to rely on anyone who knew

<u>nothing</u> about [chronic fatigue syndrome] (e.g., MS Faranda, Dr. Malik, Dr. Emad, et al.) to ignore evidence in support of Burris's [chronic fatigue syndrome] disability." *Id.*

While I do not diminish Burris' symptoms or diagnosis, they do not negate his burden of proof in order to qualify for long-term disability benefits as required by the group policy's terms: submitting "satisfactory proof" of total disability. AR, ECF 35-14 at 21. The policy's terms are crucial, as "ERISA's principal function" is to "protect contractually-defined benefits" because "the plan . . . . is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) (internal quotation marks and citation omitted). "ERISA requires '[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument … specify[ing] the basis on which payments are made to and from the plan.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1102). "The plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA] . . . . and ERISA provides no exemption from this duty when it comes time to pay benefits." *Id.* A participant's "claim therefore stands or falls by the terms of the plan, a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* (internal citations and quotation marks omitted). Moreover, as the Ninth Circuit has held, administrators are bound by objective evidence and cannot issue an award based on non-existent evidence; "conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious." *Salomaa*, 642 F.3d at 678.

While Burris places much weight on the Ninth Circuit's holding in *Salomaa*, a case in which a plaintiff diagnosed with chronic fatigue syndrome was denied long-term benefits, there is a major difference between the administrative record here and in *Salomaa*—that is, actual evidence of a disability. 642 F.3d 666. As the Ninth Circuit stated in *Salomaa*, every physician who examined Salomaa concluded that he was totally disabled by his physical condition. *Id.* at

676. No such evidence exists here. As stated above, to establish disability within the group policy, Burris must have presented evidence of not only a sickness or injury, but also a resulting incapacity to perform the material duties of his occupation. AR, ECF 35-14 at 12. There is nothing in the record indicating that he could no longer perform the material duties of his regular occupation as a result of his chronic fatigue syndrome diagnosis, other than his own subjective self-assessment and support letters from his wife and mother.[7] Furthermore, Dr. Fales' diagnosis of chronic fatigue syndrome is entirely based on Burris' self-reported symptoms.[8] "[A] plaintiff's subjective interpretation of his symptoms cannot, standing alone, establish disability." *Gray v. Unum Life Ins. Co.*, 2022 LEXIS 129121, at *13 (C.D. Cal. Jul. 11, 2022). Furthermore, regardless of a particular diagnosis, Burris was required to present proof of total disability. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an

---

[7] Such testimonials alone cannot constitute the type of proof necessary to prove disability. *See Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114 (C.D. Cal. 2015) (declining to assign significant weight to such testimonials, noting that they "present a significant potential for bias"); *Childers v. United of Omaha Life Ins. Co.*, 2013 WL 683498 at *27 (S.D.W. Va. Feb. 22, 2013) (letters of support describing "the author's observation of the deterioration of the [claimant's] condition" do not provide "the type of evidence required by [ERISA plans] to satisfy proof" as required by the plan); *Withey v. Metro. Life Ins. Co.*, 1994 WL 731584 at *4 (D. Colo. Mar. 7, 1994) (to rely on "self-serving, uncorroborated testimonials of [claimant] and her several friends" would be "beyond the bounds of reasonable judgment"); *see also Bloom v. Hartford Life & Acc. Ins. Co.*, 917 F. Supp. 2d 1269, 1285 (S.D. Fla. 2013) (family and friends testimonials not supported in the medical records); *Brigham v. Sun Life of Canada*, 183 F. Supp. 2d 427, 438 (D. Mass. 2002) (affidavits from the claimant's family and friends entitled to less weight than medical evidence in the record).

[8] Claim administrators have no duty to defer to treating physicians. *Seleine v. Fluor Corp. Long-Term Disability Plan*, 598 F. Supp. 2d 1090, 1102 (C.D. Cal. 2009), *aff'd*, 409 F. App'x 99 (9th Cir. 2010) ("Treating physicians are more or less required to accept the representations of their patients, but [the] ERISA administrator [ ] is not obligated to do so."); *Alvis v. AT&T Integrated Disability Serv. Ctr.*, 2009 WL 1026030, *17 (E.D. Cal. Apr. 15, 2009) *aff'd*, 377 F. App'x 673 (9th Cir. 2010) ("it is of no small import that the records of Plaintiff's treating physician on which Plaintiff would have the TPA rely are largely no more than a reiteration of Plaintiff's subjective complaints.") (internal quotations and citations omitted.); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1192 (C.D. Cal. 2008) ("[T]reating physicians] recorded in large measure what plaintiff had reported to them. [Agency] experts are not bound to accept what plaintiff reports. They are entitled to conduct an independent investigation to determine whether there is evidence to support a claim of disability.").

impairment is insufficient proof of disability. A claimant bears the burden of proving that an impairment is disabling."). Burris failed to meet his burden.

Though Burris adamantly argues that First Reliance mistakenly denied his claim, he fails to show the court how the denial was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. As First Reliance correctly states: "The Group Policy does not insure against a diagnosis. It insures against an employee's inability to perform the material duties of his regular occupation as it is performed in the national economy." ECF No. 71 at 8. "The question, therefore, is functional impairment. And Burris provided no proof of functional impairment." *Id*. Therefore, First Reliance's determination was not an abuse of discretion.

### B. First Reliance met its duty to engage in meaningful dialogue.

Burris also argues that First Reliance violated ERISA by failing to engage in meaningful dialogue because it did not inform him of the lack of medical evidence in time for additional material to be provided, and failed to say in plain language what additional evidence was needed and what questions it needed answered to perfect his claim. ECF No. 70 at 9. In essence, Burris argues that First Reliance's failure to engage in meaningful dialogue "forced [him] to guess" what First Reliance wanted. *Id.*

It is well established that ERISA "calls for . . . a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). Upon denying a claim, an administrator must explain reasons for the denial "in reasonably clear language," and if the administrators "believe that more information is needed to make a reasoned decision, they must ask for it." *Booton*, 110 F.3d at 1463.

The denial letter clearly supports that Burris needed to provide proof of total disability. In the denial letter, First Reliance clearly explained to Burris that it denied his claim for long-term disability benefits and provided a six-page explanation of how it made its determination. AR, ECF No. 35-5 at 11–17. First Reliance first outlined the eligibility requirements, stating that

to be eligible, there must be medical documentation to substantiate that the employee meets the definition of total disability. *Id.* at 11. It then discusses the limitations, including mental disorders and substance abuse. *Id.* at 12. Then, First Reliance outlined the information considered and explained why there was no evidence to support that Burris was totally disabled as defined by the policy. *Id.* at 13. This included a detailed explanation of Burris' medical records, concluding that the medical information in his file does not reflect a level of impairment that would render him incapable of performing the material duties of his occupation. *Id.* at 13–15. The letter further states that based on the information in his file, Burris did not meet the policy's definition of total disability and his claim must be denied:

> There were no reported limitations or restrictions in your ability to perform any activities of daily living and in fact, you were encouraged to participate in yoga and increase socialization.
>
> …
>
> Although you have been treating with a PCP and recently with a psychotherapist for depression, the available medical data from these providers suggest that your symptoms are job related and that you do not exhibit global impairment which would preclude your from overall work function. In fact, the medical records documented that you have considered looking for a job elsewhere such as at the Attorney General's office thus suggesting, that while you have indicated that you feel stuck, burnt out and don't like litigation work, you do have work capacity so long as you are not working at your current job with your current employer.
>
> As noted above, your group LTD Policy is designed to insure you from your inability to perform the material duties of your regular occupation as it is normally performed in the national economy, and not your inability to perform the material duties of your job for a specific employer or in a specific locale.
>
> …
>
> While the demands of your particular job can be so insurmountable for you that you could reasonably be precluded from continued employment at your particular law firm, the medical information in your file does not reflect a level of impairment that would render you incapable of performing the material duties of your occupation in a less busy, less demanding litigation firm. In such cases, the individual cannot be considered disabled from their occupation but rather, the individual merely needs to look for a less stressful work environment in which to perform their occupation.

> Given these facts, we have determined that you do not meet your group Policy's definition of Total Disability and your claim must be denied. Our decision has been based on the information contained in your file and the Policy provisions applicable to your claim.

*Id.* at 15–16. This language clearly communicates the reason First Reliance denied Burris' claim: there was no evidence showing that he was totally disabled because there was no proof that he could not perform the material duties of his regular occupation,[9] as required to qualify for benefits. The letter also included a description of the appeals process. *See e.g., id.* at 16. Therefore, because the denial letter clearly informed Burris in plain language of the reason for the denial, First Reliance met its duty to engage in meaningful dialogue.

## V.  Conclusion

IT IS HEREBY ORDERED that First Reliance's motion for judgment **[ECF No. 61] is GRANTED**.

IT IS FURTHER ORDERED that Burris' motion for judgment **[ECF No. 66]** and request for hearing **[ECF No. 102] are DENIED as moot**.

Dated: February 9, 2024

_____
Cristina D. Silva
United States District Judge

---

[9] As defined in the policy and outlined in the denial letter, to determine if a claimant is totally disabled (meaning they cannot perform the material duties of their regular occupation), First Reliance looks at the claimant's "occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." AR, ECF No. 35-5 at 11.